IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT DEAN CAESAR | CRIMINAL ACTION<br>NO. 18-525 |

**PAPPERT, J.**                                                                                                                 January 27, 2022

## MEMORANDUM

      A grand jury indicted Robert Caesar for producing, receiving, and possessing child pornography in violation of 18 U.S.C. §§ 2251(a), 2252(a)(2), and 2252(a)(4)(B). His trial is scheduled to begin February 23, 2022. The Government moves to introduce "prior acts" evidence against Caesar under Federal Rules of Evidence 404 and 414. After considering the parties' briefing and holding oral argument on the Motion, the Court grants it in part and denies it in part.

I

      Chester County law enforcement began investigating Caesar in July 2017 after learning he had purchased large quantities of boys' underwear and bathing suits on eBay. (Gov't Am. Mot. *in Limine* at 1, ECF 28.) He often asked for pictures of the sellers' children wearing the underwear and bathing suits, purportedly to see whether they would fit his own, fictitious children. (*Id.* at 1–2.)

      Six months later, two teenage brothers came forward to say Caesar had sexually abused them. (*Id.*) Minors One and Two, who were fourteen and sixteen at the time, explained that after they performed yard work at his home, Caesar would invite them inside to watch movies. (*Id.*) During these encounters, he would give them alcohol and

encourage them to take off their clothes.  (*Id.*)  He touched both children's genitals and instructed them to touch his.  (*Id.*)

A search of Caesar's home produced several devices containing more than seventy thousand images and videos of child pornography.  (*Id.*)  Among them were several sexually explicit images of Minor One, which he said Caesar had taken.  (*Id.*)  Officials also discovered a sexually explicit image of Minor One on Caesar's cellphone.  (*Id.*)  Minor One explained he had taken the photo and sent it to Caesar at Caesar's request.  (*Id.*)

The images of Minor One form the basis for Counts One and Two, which charge Caesar with production of child pornography.  The other images and videos found at Caesar's home underlie Counts Three and Four, which charge him with receipt and possession of child pornography.

II

A

The Government seeks to introduce evidence that in addition to abusing Minor One, Caesar abused or attempted to abuse seven other children, including Minor Two.

According to the Government, Caesar began abusing Minor Two when he was fourteen years old.  He provided Minor Two with alcohol while he was at his house performing yard work, then invited him to his bedroom to watch movies or TV.  (*Id.* at 5.)  There, he would masturbate and perform oral sex on Minor Two and instruct Minor Two to masturbate him.  (*Id.* at 6.)  He also pressured Minor Two to perform oral sex on him and to engage in intercourse.  (*Id.*)  Finally, he showed Minor Two videos of "men and women, boy and boys, and girls and girls" having sex.  (*Id.*)

Minor Three worked for Caesar for one day in 2017. (*Id.*) He was fifteen at the time. (*Id.*) Caesar told the boy he could walk around his house naked and watch pornography in Caesar's bedroom. (*Id.*) He also told Minor Three he had "two Amish boys" who worked for him and with whom he would lie on his bed and watch movies. (*Id.*) Minor Three relayed these remarks to his parents and never returned. (*Id.*)

Minor Four is Caesar's nephew, now more than thirty. (*Id.* at 7.) When Minor Four visited Caesar's residence as a child, Caesar tried to get him to swim or sleep naked. (*Id.*) He has no memory of Caesar touching him, though he could not be sure Caesar had not done so while he slept. (*Id.*)

Minors Five and Six were nine and fourteen in 2005. At the time, Caesar lived with his sister and Minors Five and Six lived nearby. (*Id.*) During a sleepover at Caesar's sister's house, Caesar fondled Minor Five's genitals and buttocks. (*Id.*) He also took photographs of Minor Six in his underwear, touched his genitals, and performed oral sex on him. (*Id.*) He paid Minor Six one dollar for each photograph. (*Id.*) On November 11, 2021, Caesar pleaded guilty to incident assault of minors Five and Six.

Caesar molested Minor Seven in the early 1980s, when the boy was twelve years old. (*Id.*) Caesar took Minor Seven to his bedroom, pulled down his pants and began masturbating him. (*Id.*)

In 2016, Caesar went fishing with Minor Eight, a twelve-year-old boy. (*Id.* at 8.) During this trip, he took Minor Eight to his house and demanded Minor Eight take off his clothes, which had gotten wet, so Caesar could dry them. (*Id.*) He then asked Minor Eight if he wanted to shower with him and when the child said no, Caesar took a

3

shower while Minor Eight sat on his bed. (*Id.*) He then laid down next to Minor Eight, put his arm around him and rubbed Minor Eight's leg with his own. (*Id.*) Caesar only allowed Minor Eight to leave after he began to cry. (*Id.*)

B

In addition to the evidence Caesar abused or attempted to abuse other minors, the Government seeks to admit evidence he had been investigated for possession of child pornography on two prior occasions.

In 2012, Chester County police searched Caesar's home after the FBI linked his IP address to a Yahoo email account that had received at least four emails containing sexually explicit images of male children the year before. (*Id.* at 8–9.) The search did not reveal any child pornography. (*Id.* at 9.)

About a year later, investigators learned a different Yahoo email account transmitting child pornography was regularly accessed from the defendant's home, his workplace and the home of one of his coworkers. (*Id.*) Police searched Caesar's laptop and discovered around 150 images of child pornography. (*Id.* at 10.)

III

The Government contends this evidence is admissible pursuant to Federal Rules of Evidence 414 and 404(b). It asserts that in addition to revealing his propensity to commit crimes involving child sexual abuse—a proper purpose for evidence admitted under Rule 414—Caesar's prior child molestation and possession of child pornography demonstrate his motive, intent and plan to produce child pornography and his knowledge that the devices recovered from his home contained child pornography. (*Id.* at 13.) The Government anticipates Caesar will argue the devices belonged to a

4

houseguest who died in 2011, and it believes evidence Caesar transmitted and possessed child pornography after his houseguest's death is important to rebutting that defense. (*Id.*; Hr'g Tr. at 109:4–22, ECF 60.)

Caesar maintains there is no proper non-propensity purpose for any of this evidence, and even if some of it is admissible under Rules 414 or 404(b), its probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues, and presenting needlessly cumulative evidence. The charged offenses—production, receipt, and possession of child pornography—are distinct from the sexual abuse allegations that form the bulk of the Government's prior act evidence. (Def.'s Resp. at 2.) Moreover, much of the evidence is remote in time, concerns inchoate acts of abuse, or traffics in uncorroborated suspicions. (*Id.* at 2–3.) As a consequence, Caesar argues, admitting this evidence would taint the jury's perception and force him to litigate the significance of decades-old encounters that have little or no connection to the case at hand. (*Id.* at 8; Hr'g Tr. at 17–20.)

## IV

### A

Prior bad acts may be admitted as intrinsic or extrinsic evidence. *See United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). Evidence is intrinsic, and not subject to Federal Rule of Evidence 404(b), only if it directly proves the charged offense or if the "uncharged acts [are] performed contemporaneously with the charged crime [and] they facilitate that commission of the charged crime." *Id.* at 248–49.

Courts analyze extrinsic prior act evidence under Rule 404(b), which prohibits evidence of "a crime, wrong, or other act" used "to prove a person's character in order to

show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The "permitted uses" of prior act evidence set forth in Rule 404(b)(2) are treated like exceptions to 404(b)(1)'s "prohibited uses," and "the party seeking to admit evidence under 404(b)(2) bears the burden of demonstrating its applicability." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014); *see also id.* ("Rule 404(b) is a rule of general exclusion, and carries with it no presumption of admissibility.") (internal quotations and citation omitted). "Rule 404(b) must be applied with careful precision, and . . . evidence of a defendant's prior bad acts is not to be admitted unless both the proponent and the District Court plainly identify a proper, non-propensity purpose for its admission." *Id.* at 274 (citing *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)).

Prior bad act evidence must satisfy a four-part test to be admissible under Rule 404(b). Specifically, the evidence must be:

> (1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested.

*Id.* at 277–78 (citing *Davis*, 726 F.3d at 441).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. For evidence offered pursuant to Rule 404(b) to be relevant, it must fit into an inferential chain "no link of which is a forbidden propensity

6

inference." *United States v. Repak*, 852 F.3d 230, 243 (3d Cir. 2017) (internal quotations and citation omitted). The Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

B

Rule 414 creates an exception to Rule 404(b)'s prohibition on propensity evidence. *United States v. Heatherly*, 985 F.3d 254, 269 (3d Cir. 2021). In a criminal prosecution for child molestation, evidence the defendant committed or attempted to commit other acts of child molestation "may be considered on any matter to which it is relevant." Fed. R. Evid, 414(a), (d)(2)(F). "Child molestation" includes the production, receipt and possession of child pornography. Fed. R. Evid. 404(d)(2)(B); *see also Heatherly*, 985 F.3d at 269; *United States v. Cunningham*, 694 F.3d 372, 385 n.22 (3d Cir. 2012). Child pornography offenses are included in Rule 414's definition of child molestation "without regard to whether . . . the offense was committed with a person before the age of 14." *United States v. Foley*, 740 F.3d 1079, 1087 n.3 (7th Cir. 2014); *United States v. Sturm*, 673 F.3d 1274, 1284 (10th Cir. 2012). By contrast, other conduct is only considered "child molestation" when it is committed with "a child," which the rule defines as "a person below the age of 14." Fed. R. Evid. 404(d)(1), (d)(2)(A), (d)(2)(C)–(E).

Even when evidence of child molestation is admissible under Rule 414, it may still be excluded under Rule 403. *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 155 (3d Cir. 2002). In making this determination, Courts should consider whether the past act

7

is substantially similar to the act for which the defendant is being tried, whether it can be demonstrated with sufficient specificity, "the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." *Id.* at 156 (quoting *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998)).

V

The Government acknowledged at oral argument that Rule 414 does not apply to evidence concerning Caesar's abuse of Minors Two, Three, Four and Six because they were not younger than fourteen at the time of the abuse. (Hr'g Tr. at 96:14–15, 99:6–14, 101:19–22, 104:1–3.) It may only be admitted if it satisfies Rule 404(b)'s requirements.

A

Evidence concerning Caesar's abuse of Minor Two is admissible under Rule 404(b). Caesar conceded as much. (Hr'g Tr. 115:4–7; 118:11–12.)

One proper non-propensity purpose for prior act evidence is to "supply[] helpful background information to the finder of fact." *Green*, 617 F.3d at 250 (3d Cir. 2010). Minor Two's testimony about his own grooming and abuse is necessary to provide the jury with a complete understanding of the crime and of Minor Two's testimony regarding his brother's abuse. As the Government explained at oral argument, "the whole reason that [Minor Two is] there at Mr. Caesar's residence, in a position to witness his younger brother being molested by Robert Caesar, is [that] he's also being molested by Robert Caesar." (Hr'g Tr. at 96:14–20.) Minor Two's testimony is also relevant to show Caesar had the opportunity and plan to commit the charged offenses.

8

Caesar's grooming and abuse of Minor One's older brother helped create the conditions in which he could lure Minor One into his house, ply him with alcohol, molest him, and produce images of him engaged in sexually explicit conduct. *See* (*id.* at 97:21–23).

Moreover, Minor Two's testimony that Caesar showed him videos of "boys and boys, and girls and girls" having sex supplies direct proof Caesar knowingly possessed child pornography. As a consequence, that testimony is admissible as intrinsic evidence of Caesar's crimes. *Green*, 617 F.3d at 248.

The value of Minor Two's testimony is not outweighed by the risk of unfair prejudice or confusion of the issues. The Government can elicit the testimony it needs from Minor Two without dwelling on the specific acts of sexual abuse Caesar committed against him. Any lingering risk of unfair prejudice can be mitigated by a proper limiting instruction. *See Repak*, 852 F.3d at 247; *United States v. Vosburgh*, 602 F.3d 512, 538 (3d Cir. 2010).

B

Evidence of Caesar's interactions with Minors Three and Four is not admissible. It is not relevant to show Caesar's plan or intent to use Minor One to produce child pornography, or to prove Caesar knowingly possessed the child pornography found on the hard drive.

Caesar's conduct and comments to Minors Three and Four were inappropriate, but he never engaged in sexual conduct with them and never explicitly suggested doing so. Additionally, nothing about these interactions suggests Caesar's actions were part of a plan to produce child pornography. Accordingly, they shed little light on whether

Caesar intended to produce child pornography of Minor One.[1]  *See United States v. Ivins*, No. 09-320, 2010 WL 1388999, at *3–4 (E.D. Pa. Mar. 31, 2010) (explaining that dissimilar conduct involving minors was not probative of the defendant's intent to commit the charged offenses).  Nor did Caesar make any reference to possessing or viewing child pornography during these encounters.  *Cf. id.* at *5 (explaining the defendant's relationship with a minor did not show "he was likely to know there was child pornography on his computer.")  Instead, their testimony would invite the jury to conclude that because Caesar acted in ways that suggest a prurient interest in children, he probably acted on it by producing, downloading, and storing child pornography.  This is the type of propensity inference Rule 404(b) forbids.

To the extent the Government seeks to introduce this evidence to argue that Caesar's sexual interest in children gave him a motive to commit the crimes with which he is charged, its marginal probative value is outweighed by the risk of unfair prejudice.  There is other evidence from which the jury can infer that Caesar is sexually interested in children, including the testimony of Minors One and Two, his attempts to obtain photos of scantly clad boys from vendors on eBay and the seventy thousand images and videos of child pornography recovered from his home.  *See Cunningham*, 694 F.3d at 389 (3d Cir. 2012) (explaining that probative value of each new piece of evidence is diminished by the previous introduction of evidence proving the same point).  Indeed, that stockpile includes at least one image of Caesar himself molesting a

---

[1] It is unclear whether Caesar was referring to Minors One and Two when he told Minor Three he had "two Amish boys" who worked for him and with whom he would lie in bed watching movies. If this is indeed a reference to Minors One and Two, then his comment about them to Minor Three is admissible because it corroborates the testimony of Minor One and thus "directly proves" the charged offense.  *Green*, 617 F.3d at 248.

10

child.  (Hr'g Tr. at 105:7–13.)  Evidence he made inappropriate suggestions to other minors would be needlessly cumulative and do little more than reinforce his propensity to commit deviant acts with minors.  *See Ivins*, 2010 WL 1388999, at *3; *United States v. Shaulis*, No. 20-2254, slip op. at 10 (3d Cir. Jan. 26, 2022) (cautioning that "evidence of motive often overlaps with evidence of propensity so completely that '"motive" . . . is just another word for propensity.'" (quoting 1 Robert P. Mosteller, *McCormick on Evidence* § 190.5 (8th ed. 2020)).

C

Evidence about Caesar's abuse of Minor Six is also inadmissible.  While Caesar did take photographs of Minor Six posing in his underwear, there is no evidence his abuse of Minor Six and Minor One formed part of a common plan.  Caesar's interactions with Minor Six occurred more than a decade before his abuse of Minor One and involved a different method of enticement.  Instead of giving Minor Six alcohol and inviting him to watch movies in his bedroom, he paid Minor Six to let him take the photos.  Given the dissimilarities between Caesar's abuse of Minor Six and his abuse of Minor One, it is not relevant to Counts One and Two for any non-propensity purpose.

Evidence that Caesar paid Minor Six to take photographs of him in his underwear makes it marginally less plausible Caesar did not know the devices recovered at his house contained child pornography.  But a single incident over a decade old does little to prove Caesar's knowledge in this case.  *See Caldwell*, 760 F.3d at 283 (3d Cir. 2014).  Its evidentiary value is further diminished because the Court will admit evidence Caesar received and possessed child pornography in 2014, which is more probative of his knowledge of the contents of the devices recovered in 2018 than is

11

his abuse of Minor Six. *See Cunningham,* 694 F.3d at 389. Moreover, the fact that Caesar is also charged with producing child pornography heightens the risk the jury will conclude because Caesar once produced child pornography, he did so again, even if that evidence is ostensibly offered to prove an unrelated element of a separate crime.

VI

A

The Court will admit evidence Caesar sexually abused Minor Five. Minor Five was nine at the time Caesar molested him, so evidence of his abuse is admissible to prove Caesar had the propensity to abuse children. Fed. R. Evid. 414(a), (d)(2)(C); *United States v. Merz*, 396 F. App'x 838, 842 (3d Cir. 2010). The probative value of his testimony is significant. Minors One and Two are brothers and their stories of abuse are intertwined. Presenting evidence Caesar abused another, unrelated child makes it less likely Minors One and Two are fabricating their allegations. *See United States v. Brimm*, 608 F. App'x 795, 800 (11th Cir. 2015) (highlighting the importance of extrinsic evidence of the defendant's sexual proclivities when he seeks to discredit the related testimony of two victims). Caesar's abuse of Minor Five was less severe than his abuse of Minors One and Two, but it paralleled it in important ways. Each act occurred at the place Caesar was living at the time, and each involved Caesar touching the victim's genitals. In addition, while evidence of Caesar's abuse of Minor Six is not admissible under Rule 414, his pattern of abusing male siblings underscores the fundamental similarity between his abuse of Minor Five and his abuse of Minor One. Evidence Caesar has a history of molesting boys tends to show Minors One and Two are telling

the truth.

While Minor Five's age may increase the risk of unfair prejudice, the risk is not so high it substantially outweighs the probative value of his testimony, especially because the conduct is otherwise less inflammatory than Caesar's conduct with Minors One and Two. Nor does the relative age of the allegation eliminate its probative value, given the evidence it was part of a pattern of abuse that spanned decades. *See Merz*, 396 F. App'x 838, 843 (3d Cir. 2010) (affirming admission of thirteen-year-old child molestation conviction).

B

On the other hand, the Court will exclude evidence regarding Minors Seven and Eight. While this evidence is admissible under Rule 414, its probative value is substantially outweighed by the risk of confusing the issues and presenting cumulative evidence.

Caesar's abuse of Minor Seven occurred more than thirty years before the charged conduct. The probative value of this encounter, even as propensity evidence, is limited by its remoteness. *See United States v. Bunty*, 617 F. Supp. 2d 359, 376 (E.D. Pa. 2008) (excluding evidence of sexual abuse that occurred more than twenty years before the charged conduct). Instead of focusing on whether he used Minor One to produce child pornography, Caesar would be forced to contest stale allegations he molested Minor Seven. *Id.*

Minor Eight's allegations are even more disconnected from the conduct charged in this case. While a jury could conclude Caesar attempted to molest Minor Eight within the meaning of Rule 414, Caesar will seek to inject ambiguity and doubt into

Minor Eight's account of this inchoate offense. Because Caesar's attempted molestation of Minor Eight cannot "be shown with reasonable certainty . . . its probative value is reduced and it may prejudice the defendant unfairly, confuse the issues, mislead the jury, and result in undue delay and wasted time." *Johnson*, 283 F.3d at 156. It would not be productive or fair to force Caesar to litigate his intentions toward Minor Eight given the more definitive example of abuse Minor Five will provide.

The evidence concerning Minors Seven and Eight is far less probative than the prior acts admitted in *United States v. Prawdzik*, No. 07-40-03, 2008 WL 3983811 (E.D. Pa. August 25, 2008). In that case, the acts were repeated, close in time to the charged offenses, and similar to the type of sexual assaults depicted in the child pornography the defendant was charged with producing. *Id.* at 4. They also helped to rebut the defendant's efforts to shift blame to her codefendant by arguing she committed the charged offenses out of duress or without understanding what she was doing. *Id.* The evidence of Caesar's abuse of Minors Seven and Eight is less closely connected to his abuse of Minor One and unnecessary to rebut Caesar's potential defenses. The risk Minor Seven and Eight's testimony will mire the trial in disputes about events far removed from the charged offenses eclipses whatever value it might have.

## VII

The 2012 child pornography investigation is inadmissible because there is not sufficient evidence for a jury to conclude Caesar actually possessed child pornography around the time of that investigation. In order to admit evidence of a prior act under either Rule 414 or Rule 404(b), there must be evidence from which a jury could find by a preponderance of evidence that the prior act occurred. *Johnson*, 283 F.3d at 153; *see*

*also* Fed. R. Evid. 104(b).  But the Government admitted a jury could not conclude Caesar possessed child pornography in 2012. (Hr'g Tr. 112:9–16.) That makes sense: the search produced no evidence of child pornography. (Mot. *in Limine* at 9.) It did not even produce evidence the Yahoo account that sparked the investigation had been used on any of the devices at Caesar's home. (*Id.*)

Given the other evidence in the case, the mere fact that the Yahoo account was linked to Caesar's IP address on one occasion in December 2011—six months after it received attachments containing child pornography—is of trifling value. This is especially true because it does little to rebut Caesar's anticipated defense to the receipt and possession charges. Caesar could claim the Yahoo account was used by his houseguest, who may have been alive at the time the account received the child pornography. *See* (Hr'g Tr. at 109:4–22). Introducing evidence of this investigation would produce unnecessary disputes about who controlled the Yahoo account and what, if anything, can be inferred from its fleeting association with Caesar's residence.

By contrast, evidence of the 2013–14 child pornography investigation is admissible under both Rules 414 and 404(b). Two facts distinguish this later investigation and enhance its probative value. First, investigators actually recovered approximately 150 images of child pornography from Caesar's computer. Second, this investigation and the subsequent discovery of child pornography occurred after Caesar's houseguest is alleged to have died. A reasonable juror could conclude Caesar possessed child pornography in 2014, and his possession of child pornography in 2014 is relevant both to demonstrate his propensity to possess child pornography and because it makes it more likely he knowingly possessed the hard drives recovered in 2018. *See*

15

*United States v. Lee*, 701 F. App'x 175, 183 (3d Cir. 2017); *United States v. Cox*, No. 11-99, 2011 WL 4906672, at *5 (D.N.J. Oct. 14, 2011) (explaining that evidence the defendant previously possessed child pornography was admissible to show he knowingly possessed the child pornography at issue in the case). The online exchange of child pornography from an account associated with Caesar's address in 2014, coupled with the child pornography recovered from his computer, renders implausible any effort to pin the devices on a houseguest who died before that time.

The probative value of testimony regarding the 2013–14 investigation is not outweighed by the risk of unfair prejudice. The balance may change, however, if the Government seeks to introduce images of child pornography associated with this earlier investigation. *Cf. Cox*, 2011 WL 4906672, at *6 (concluding evidence the defendant previously possessed child pornography was admissible under 403 in part because the Government "intend[ed] only to introduce summary evidence rather than explicit images or detailed descriptions"). The Court cannot decide whether any images are admissible under Rule 403 without reviewing them. *United States v. Cunningham*, 694 F.3d 372, 386 (3d Cir. 2012). That determination may also turn on whether Caesar disputes whether the images exchanged by the Yahoo account or recovered from his laptop were in fact child pornography.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

16